Mitchell v. Burnham.

## COUNTY OF OXFORD.

————o————

Ammi R. Mitchell, *in Equity, versus* Olive R. Burnham.

It is not necessary, in order to constitute a mortgage, that there should be any collateral or personal security for the debt secured thereby.

A bill in equity to redeem a mortgage which had been assigned and transferred, with due notice to the plaintiff, should be brought against the assignee; and to him the tender made and upon him the demand for the rents and profits, although the deed of assignment may not have been recorded; but where the assignment has not been recorded or notice of it given, the tender may well be made, and notice to account for the rents and profits given, to the mortgagee; and payments made to him without notice or record of the assignment will be upheld in payment of the debt.

An assignment of a mortgage is a deed by which the interest of the mortgager is transferred, and a Court of Chancery will interfere to protect equitable rights not cognizable at law.

The complainant alleges, that, on May 16, 1844, Benjamin H. Harnden was seized in fee of the described land, being his homestead in Denmark. On that day he conveyed the same to Benjamin Harnden, in mortgage, conditioned for the maintenance and support of the said Benjamin and other persons, as specified in said mortgage and in said bill.

The contingencies, upon the happening of which said Benjamin H. was to be exonerated from the support of the persons named in the condition of said mortgage, had happened before the filing of the bill, as to all the persons, except Betsey Harnden.

That on the 10th day of August, 1846, Benjamin H. Harnden, then in possession of the land, conveyed the premises to John Jameson.

That on the 8th day of February, 1851, John Jameson

conveyed the premises to the complainant. By force of which the plaintiff claims the right to redeem the premises.

That on the 30th day of March, 1850, Benjamin Harnden brought a writ of entry upon said mortgage, against said Benjamin H. Harnden, and on the second Tuesday of October, 1851, conditional judgment was recovered upon said mortgage, in said suit — damages assessed by the court at $250, and costs $84,31.

That writ of possession was issued February 14th, 1852, which was served February 24th, 1852, and recorded March 13th, 1852.

That Benjamin Harnden thereupon went into possession.

That on the 2d day of May, A. D. 1853, Benjamin Harnden, by deed, conveyed the premises to the said Olive R. Burnham. Said Betsey Harnden executed the same deed, in token of her relinquishment of dower.

That since February 24th, 1852, said Benjamin was in possession, till he sold to Olive R. Burnham, and since that, she has been in possession, to the date of the filing of the bill, receiving rents and profits.

That the rents and profits have been more than sufficient to pay the expenses of support and services, in the condition of said mortgage mentioned.

That on January 13th, 1855, complainant called for an account of rents and profits, and the amount due upon said mortgage, of Olive R. Burnham, and offered to pay what was due, for the redemption of the premises. She declined rendering an account. He then, on the same day, tendered her $404, in satisfaction of what was due upon the mortgage, for debt, interest and costs, and one dollar more for deed of release — in all, $405, all in American gold — offering, at the same time, to pay any other sum which she should show to be due. She accepted and took the money, but refused to convey or deliver possession of the premises.

The prayer is for an account of rents and profits, and to be permitted to redeem, and for other relief.

In the amendment, after answer filed, the complainant makes Jane Osgood a party defendant, and alleges, that there was, in fact, no conveyance of said premises from said Olive R. Burnham to said Jane Osgood, that he had no notice of any, and none was recorded in the Oxford Registry.

The answer of Olive R. Burnham admits the title of Benjamin H. Harnden, on May 16th, 1844, as alleged, and alleges that the same premises were previously, on the same day, conveyed to said Benjamin H., by said Benjamin.

She also admits the conveyances from Benjamin H. Harnden to John Jameson, and from said John Jameson to the complainant, as set forth in the bill.

She also admits the suing out of the writ of entry—the judgment, possession taken, and record made, as set out by the complainant.

She also admits the conveyance to her from said Benjamin Harnden, as set out in the bill.

She alleges that on March 30th, 1854, she conveyed the premises to Jane Osgood, wife of James Osgood, and all her right and interest therein, and that the complainant has ever since had actual notice thereof, and that since said conveyance she has not had, and has not claimed, and does not now claim, any right, title or interest in the said premises, but disclaims all right, title and interest in and to the same.

She denies that she and Benjamin Harnden have had possession, and taken the profits and rents, as alleged by the complainant, and says that since March 30th, 1854, Jane Osgood, with her husband James Osgood, has been in possession, and said Olive has had no interest therein. She also alleges, that while said Benjamin Harnden and said Olive were in possession of the premises, they did not take the rents and profits, but the same were taken by the complainant.

She also admits that Benjamin Harnden, deceased September, 1854, Sabra Harnden, deceased February, 1853. Olive

Mitchell *v.* Burnham.

and Hannah Harnden have each married, and Frances Jane B. White attained the age of fourteen years October 25th, 1853.

She denies that rents and profits have been received more than sufficient for the support and services mentioned in the condition of said mortgage—and alleges that she, by her personal services, from February 24th, 1852, supported and maintained said Benjamin and Sabra, until their respective deaths, and has supported and maintained the said Betsey and Frances J. B. White to the time of answer.

She admits that S. C. Strout, acting as attorney for the complainant, February 13th, 1855, tendered her $405, in the manner and for the purposes set out in the bill.

She also alleges that she declined accepting said money, but that said Strout, against her consent, left it in her house.

She admits that she did not deliver possession to the complainant, or release the premises to him; but alleges, that, at the time of the tender, she was not mortgagee, or a person claiming under the mortgagee, of said premises, and had no right, title, interest, demand or possession in the premises.

The complainant's bill, after the said amendment, was served on said Jane Osgood, and taken *pro confesso* against her, at the March Term of the Supreme Judicial Court for Oxford County, 1856.

*Copy of condition of Mortgage.* Provided, nevertheless, that if the said Benjamin H. Harnden, his executors and administrators, shall at all times, during the natural life of the said Benjamin Harnden, my father, and Betsey Harnden, wife of the said Benjamin Harnden, my mother, well and truly and sufficiently support and maintain the said Benjamin Harnden and Betsey Harnden, above named, in the house they now live in, and in case of the loss of the present house, in an other on the same farm, and them provide with meat, drink, clothes, nursing, medicine, and all other things necessary and convenient—to provide them with a horse and carriage, and spending money, whenever it is necessary

—to provide house and home for my three sisters, to wit: Sabra, Olive and Hannah Harnden, whenever they are at my house, until they shall get married—the above named persons are to manage, labor and do for the benefit of the family and parties above named, when they are in health and able, as they have usually done for years past. Said Benjamin H. Harnden is to keep and support, both summer and winter, five sheep, for the particular use and benefit of his mother, Betsey Harnden, the income of said sheep to be hers during her natural life, and at her decease said sheep to be his property. Frances Jane B. White is to have a home and living with the said Benjamin H. Harnden till she arrives at the age of fourteen years, the said Benjamin H. Harnden to pay no debts of his father contracted prior to this date, except a note given by us both to Cotton Lincoln.

Now, provided, if the said Benjamin H. Harnden, above mentioned, shall well and truly observe, keep, do, pay and perform all of the above covenants and stipulations, above written, according to the true meaning and intent of the parties above mentioned, this deed to be null and void; otherwise shall remain in full force and virtue.

*Deposition of Ammi R. Mitchell, plaintiff.* He states, that Benjamin Harnden remained in possession of the premises mentioned in the bill, from the time the writ of possession was served until he died. That said Mitchell made provision for the maintenancce of said Benjamin, and other persons mentioned in said condition, after possession was taken by Benjamin—went up to see them, offered aid in carrying on the farm, or in their support—also spoke to Timothy C. Pierce and Abner S. Harnden, and requested them to see that Benjamin and his wife should not want for anything to make them comfortable, and he would pay the bills. Had such conversations at different times, and in fulfillment of these assurances afterwards made an arrangement with Benjamin H. Harnden to carry on the farm for them—sent up to him provisions for them—often heard from Benjamin and

wife expressions of satisfaction with these arrangements and the supplies rendered. Benjamin, senior, at different times, told him he was perfectly satisfied with this arrangement, and with the way things were going on.

Thinks the income of the farm was more than enough for the support of the persons named in the condition of said mortgage, according to its terms.

That he never received any rents and profits of said farm, except about $30, at one time, for some hay. The farm and the rents and profits were under the control of the said Benjamin, and have never been under the control of deponent.

That he never had any notice or knowledge, in any way, or from any source, prior to the filing of said Olive's answer, that she had conveyed her interest in said farm to Jane Osgood, or any one else.

That since Jameson conveyed to him, he has paid all the taxes, money and highway.

That in January, 1855, he employed Sewall C. Strout to redeem the mortgage above mentioned, from Olive R. Burnham aforesaid, and furnished said Strout funds and gave him instructions in reference to the same.

*Deposition of Sewall C. Strout.* Deponent states that in January, 1855, and prior to the 13th, he was employed by the complainant to see Mrs. Olive R. Burnham, one of the defendants, and redeem from her the mortgaged premises mentioned in the bill. The complainant furnished funds for that purpose.

That, at his suggestion to the complainant, on the 10th day of the same January, as he thinks, deponent went to Fryeburg, for the purpose of examining the records, to ascertain if said Olive R. Burnham had conveyed her interest to any one.

That the records contained no conveyance from said Olive, of said premises, to any one. Deponent immediately returned to Portland, and on the next morning, which was January 13th, he went to Saco, to see Mrs. Burnham, aforesaid. Saw her at her shop, and told her that he was acting for Mr.

Mitchell, the complainant, and wished, for him, to redeem said mortgage. That he asked her for an account of the rents and profits of the farm, and of the amount due upon the mortgage. That she declined giving either.

That deponent told her if she did not do that, he should make her a tender; if she would do it, that he would pay her the amount, and save litigation. That he endeavored to compromise and adjust the matter, but without effect.

That said Olive told him, in the course of the conversation, that Betsey Harnden, her mother, had been stopping at Saco with her, and was there then, and she was supporting her there.

That deponent told her he had examined the records at Fryeburg, and ascertained that the title of Benjamin Harnden, the mortgagee, was then in her,—to which she assented. That she then spoke of the land as hers, and throughout the conversation treated it as hers, subject to the right of redemption. In no part of the conversation did she tell him she had conveyed away her interest, or say anything from which he could infer that she had.

That deponent never understood from her, in any way whatever, or from any one else, that she claimed to have conveyed away her interest, until he saw the answer she filed in this suit.

That afterwards, on the same day, (January 13th,) for Mr. Mitchell, and of the money furnished by him, he tendered to her $404, to redeem said premises, specifying, at the same time, the parties to said mortgage, and the land, and one dollar more for a deed of release, being $405 in all,—all of which was American gold coin. At the same time he offered to pay her any further amount, if any, which she would show to be due upon said mortgage, upon giving an account.

That she at first declined to accept the money, but, after consultation, she said she would take the mony, and reached out her hand; and deponent placed the same money in her hand, and then left.

Mitchell *v.* Burnham.

*Howard & Strout,* solicitors for the plaintiff.

The plaintiff is the owner of the equity of redemption, in the premises described, and he alleges that the defendant, Burnham, holds the interest of Benjamin Harnden, the original mortgagee.

Benjamin Harnden, the original mortgagee, entered for the purpose of a foreclosure, February 24, 1852, under a judgment of court.

January 13, 1855, the plaintiff demanded an account of Mrs. Burnham, which she declined to render, and afterwards, on the same day, he tendered her four hundred and five dollars, for the redemption of the mortgage, which was the amount of the conditional judgment, with interest and costs; and offered to pay any further sum she would show to be due, upon the mortgage. This money was accepted by Mrs. Burnham, and has been retained by her.

The plaintiff's bill was filed February 15, 1855.

Mrs. Burnham, in her answer, disclaimed all title and interest in the premises, and alleged a previous conveyance by her to Mrs. Osgood, the other defendant.

The plaintiff amended his bill, after Mrs. Burnham's answer is filed, by making Mrs. Osgood a party, and alleging that no such conveyance, as alleged by Mrs. Burnham, was ever made to Mrs. Osgood; that no such conveyance was ever recorded, and that the plaintiff never had any notice of any such conveyance.

The bill, as amended, after service upon Mrs. Osgood, was taken *pro confesso* against her at the March term, 1856.

These facts appear in the bill, answer and proofs in the case.

Upon these facts, we claim that the plaintiff is entitled to redeem, according to the provisions of R. S., ch. 125, ss. 16 and 17.

*T. A. Hayes,* solicitor for the defendant.

The plaintiff is not entitled to the decree he asks, because

I. The deed from Benjamin H. Harnden to Benjamin

Harnden, of May 16, 1844, was *not a mortgage deed*, but a conditional deed, to become void upon the performance of certain conditions, which have *never been performed*.

A mortgage is the conveyance of an estate, by way of pledge, for the security of *debt*. 4 Kent's Com., 134.

There was no *debt* from B. H. Harnden to Benjamin Harnden—no note, bond, or evidence of indebtedness of any kind. He was under no obligation to perform the acts enumerated in the condition of his deed to his father. He never even *promised* to perform those acts. No action could have been enforced against him for omitting their performance. He was at liberty to perform, or omit to perform. If he elected to keep the condition of the deed, he would thereby secure the estate to himself absolutely. If not, he would fail to secure it.

This was the probation of the younger Harnden. The father owned the farm. He conveyed it to the son, and on the same day, as a part of the same transaction, he took the deed described in the bill, not as security for a debt, but to test the worthiness of the son to become his successor to the homestead farm.

Almost all the details of the condition exclude the idea of indebtedness.

II. But if the deed from B. H. Harnden to B. Harnden was a mortgage, the plaintiff is not entitled to redeem, because

1. Betsey Harnden is not a party to this bill in equity.

She is interested in the mortgage. *Pike* v. *Collins*, 33 Maine R., 38; and should have been made a party to the bill.

2. The mortgage cannot be redeemed during the life of Betsey Harnden, because one of its conditions cannot be performed fully until her decease.

She was to be supported, &c., during her natural life, and that, as appears from the bill and answer, has not terminated.

3. The tender was not made to the *mortgagee or person* claiming *under the mortgagee*, as is necessary by R. S., ch. 125, s. 17. *Wing* v. *Davis*, 7 Maine R., 31.

The bill was not brought in season to give the plaintiff the benefit of R. S., ch. 125, s. 16, but he must bring himself within s. 17 of the same chapter.

In the bill, as amended, it is alleged that the defendant, Burnham, is the person claiming under the mortgagee, and that there was no conveyance from her to Jane Osgood, and that the plaintiff had no notice of any.

The defendant, Burnham, in her answer, under oath, in direct response to these averments, declares, "that on March 30, 1854, she conveyed the premises to Jane Osgood, and all her right and interest therein, and that the plaintiff has ever since had actual notice thereof," &c.

To control this answer, there is no evidence against it, equivalent to the testimony of two credible witnesses, testifying to the contrary.

There is only the testimony of Mr. Strout, that he made a loose, unofficial examination of the records of Oxford county for a registry, and the statement, under oath, of the plaintiff, that he had no notice or knowledge. She also denies that she ever received the tender made by Mr. Strout.

The omission of the defendant, Osgood, to make answer and produce her deed, cannot affect the defendant, Burnham, especially when this omission was in consequence of a mistake of her counsel in Oxford county.

*Howard & Strout,* in reply:

The deed from Benjamin H. Harnden to Benjamin Harnden is a mortgage. It is in form a mortgage, and it is not necessary to the validity of a mortgage, that the debt or contract secured by the mortgage should be expressed in a separate paper. It may be in the instrument itself. *Smith* v. *People's Bank,* 24 Maine R., 185.

The remedy of the mortgagee, for a failure to perform the condition, by the mortgager, was by a foreclosure of the mortgage.

Benjamin Harnden treated the conveyance to him as a

mortgage—brought his action upon it, and took the conditional judgment, as of mortgage.

The second objection of the defendant is, that Betsey Harnden should have been a party. This was not necessary, because she was not a party to the mortgage, and there was no obligation from the mortgagee to her, to support her. She could maintain no action upon the mortgage. Her husband made provision for her in the condition of the mortgage, and took security for its performance to himself, and not to her. He held the title, and at most he was but a trustee in equity for her. Could he not release the condition? Betsey's remedy, if any, was in the name of her husband only.

The defendant, Burnham, holds the title of Benjamin Harnden, and if that title was charged with a trust in favor of Betsey Harnden, that trust still attaches to the estate in the hands of the defendant, Burnham, and she would be the proper person to represent and protect her interests.

The court may, by its decree, protect Betsey's interest, if she has any. *Austin* v. *Austin,* 9 Vermont R., 420.

Benjamin Harnden entered to foreclose for breach of the condition. The plaintiff seeks to redeem from *that foreclosure.*

The mortgage is still subsisting, and full performance cannot be made until the death of Betsey Harnden. Only a part of the condition of the mortgage has been broken. In such case the plaintiff may maintain his bill upon tender o· performance of the part broken. *Saunders* v. *Frost,* 5 Pick. R., 259; *Wilder* v. *Whittemore,* 15 Mass. R., 262.

If the plaintiff is permitted to redeem from the breach for which Benjamin entered, the mortgage still subsists, so far as Betsey's rights are concerned, if she has any rights under the mortgage. The decree in favor of the plaintiff does not injure her, and if so, she need not be a party. Story's Equity Pleadings, 4th edition, s. 74, a; *Mann* v. *Richardson,* 21 Pick. R., 355.

Mitchell v. Burnham.

But further, Benjamin Harnden obtained the conditional judgment upon the mortgage, October, 1851. The damages were then assessed by the court at $250 and costs. This amount remaining unpaid, he entered into possession on the 24th of the following February. The amount of damages and costs then became a debt due the mortgagee, and if any further breach occurred after the commencement of Benjamin's suit, and before May 2, 1853, the damages for such breach became an unliquidated debt. On the second day of May, 1853, Benjamin Harnden, by deed of warranty, conveyed these premises to the defendant, Burnham, and Betsey Harnden executed the deed in token of her relinquishment of her right of dower.

This conveyance was a transfer of the mortgage, and mortgage debt, and all rights under the mortgage. It transferred, therefore, to the grantee the claim for damages assessed by the court, and also all claim for damages for any breach between the commencement of the suit to foreclose, and the date of said Benjamin's conveyance.

Beyond this, Benjamin's deed conveyed nothing to Burnham, because the contract secured by the mortgage was for the support of certain persons. An assignment of such contract is a waiver and release of the contract, as to future support. The assignor cannot claim performance, after he has assigned his interest, and the obligor most certainly cannot be compelled to support any persons other than those named in the contract.

Hence Benjamin Harnden, on the second day of May, 1853, with the concurrence of his wife, released, by his deed to Burnham, all claim to future support under the condition of the mortgage, and therefore Betsey Harnden has no interest whatever in the mortgage; and the plaintiff is entitled to redeem, upon payment of damages for the breach before said second day of May.

But if the conveyance by Benjamin does not operate as a release to this extent, still it was an assignment of all their

claim to damages for the breach from which the plaintiff now seeks to redeem; and therefore Betsey need not be a party. *Bailey* v. *Myrick,* 36 Maine R., 50.

*Pike* v. *Collins,* cited on the other side, is not inconsistent with the foregoing views. We have been informed that Betsey Harnden has deceased. But, if this should not be true, still the plaintiff must have the right to redeem during her lifetime, because otherwise he could not redeem at all, as the estate would have become absolute in the defendant, Burnham, in 1855.

But if the court should think Betsey Harnden a necessary party, then we ask leave to amend, and make her a party.

The tender was made to Burnham, to whom the mortgagee had previously conveyed. It is not insisted that the tender was not sufficiently large. The testimony is, that the plaintiff never had any notice of a conveyance of the estate by Burnham to Osgood, and that the records of Oxford county show no such conveyance. They were examined immediately before the tender, for the purpose of ascertaining in whom the title of the mortgagee then was; and during all the conversation and negotiation on the day of the tender, between Mr. Strout and the defendant, Burnham, she made no statement and gave no intimation that she had conveyed her interest, but, on the contrary, spoke of it throughout as hers. And she then accepted the money tendered, and has retained it in her hands, or under her control, ever since. All this appears in the depositions of the plaintiff and Mr. Strout.

After Mrs. Burnham's answer, alleging a conveyance by her to Mrs. Osgood, the plaintiff amended his bill, and made Mrs. Osgood a party, and alleged that no such conveyance had ever been made, and, if made, that it was not recorded, and he had no notice of its existence. This Mrs. Osgood *admits,* by allowing the bill to be taken *pro confesso* against her.

And the answer of Mrs. Burnham is controlled by the testimony of the plaintiff and Mr. Strout, and the circumstances

of the case, from all which it satisfactorily appears, that no such conveyance had ever been made.

But if there had been such a conveyance, and the *plaintiff had no notice*, then the tender was properly made to Burnham, who held the record title. *Hubbard* v. *Turner*, 2 McLean, 519; *Hodgdon* v. *Nayler*, 4 Watts & Serg., 426.

But the bill was filed in season to allow the plaintiff the benefit of R. S., ch. 125, s. 16, and a tender was not necessary, as the defendant refused to render an account.

Benjamin Harnden took possession under his writ of possession, February 24, 1852.

The foreclosure began at that date. R. S., ch. 125, s. 3, first two paragraphs, and ss. 4 and 6 of same chapter, and ch. 105 of laws of 1849.

The foreclosure does not commence at the date of the judgment, or of the writ of possession, but at the time *actual possession* is taken under the writ of possession.

This bill was filed February 15, 1855.

Filing a bill in equity to redeem, is a commencement of the suit, and prevents the foreclosure becoming absolute. *Van Vronker* v. *Eastman*, 7 Met. R., 157.

The defendant, Burnham, admits the tender, but disclaims all right, title and interest to the premises.

She is not, therefore, in a position to resist the plaintiff's claim, or to object that Betsey Harnden should be a party. If her statement is true, a decree for the plaintiff cannot injure her, except perhaps as to costs.

APPLETON, J. A mortgage is a conditional conveyance of land, designed as a security for the payment of money, the fulfillment of some contract or the performance of some act, and to be void upon such payment, fulfillment or performance. To constitute a mortgage it is not necessary that there should be any collateral or personal security for the debt secured by the mortgage. *Smith* v. *Peoples' Bank*, 24 Maine R., 185. The deed, Benjamin H. Harnden to Benja-

min Harnden, of the 16th of May, 1844, by which provision is made for the support of the latter and of his wife and children, must be regarded as a mortgage, though in fact no bond may have been given.

It appears that Benjamin Harnden brought a writ of entry upon this mortgage, and recovered judgment thereon on the second Tuesday of October, 1851, upon which, subsequently, a writ of possession issued, under which an entry was made by him on the premises sought in this bill to be redeemed. After the rendition of judgment, and entry under the writ of possession, the mortgagee on the 2d of May, 1853, conveyed his interest in the mortgaged premises by deed which was duly recorded.

The complainant, through various mesne conveyances, having acquired the equity of redemption on the 13th of January, 1855, called on the defendant, Burnham, for an account of the rents and profits, which she declined to render; he therefore caused a tender to be made of an amount much exceeding that for which the conditional judgment had been rendered, and costs and interest thereon, and left the same in her hands. It does not seem to be contested that the sum then tendered was amply sufficient. As the mortgage had been assigned to, and as the title to the same appeared of record to be in her, the complainant, after such demand, refusal to account, and tender, has brought this bill for the purpose of redeeming the mortgaged premises.

The defendant, Burnham, against whom the bill was originally commenced, sets up by way of defence in her answer, the fact that she had, previously to the demand upon and tender to her, parted with all her interest in the mortgaged premises to Jane Osgood, upon whom the demand to account and to whom the tender should have been made, and that the complainant had notice of all these facts, and that consequently the bill cannot be maintained against her.

It may be conceded that if there was a valid assignment and transfer of the mortgage, and the complainant had due

notice thereof, his demand for an account of the rents and profits, and his tender should have been made to such assignee, and his bill brought against her, though the deed of assignment may not have been recorded.

The fact of notice to the complainant, which is asserted in the answer, is a material fact in determining the rights of the parties. The complainant, by the existing law of this state, is a competent witness, and he most explicitly denies all notice of the transfer of the mortgage.

No rule can wisely be established by which any judgment is peremptorily made of the trustworthiness of testimony in advance of its utterance, and in entire ignorance of its truth or falsity. Any such rule, if established, would afford about as safe a guide for the action of the court in judicial investigations of fact as the oracular utterances of the astrologer would for the conduct of life. The old rule of equity, that the answer of the defendant when responsive to the bill, is to be taken as true unless disproved by two witnesses or by a witness and corroborative circumstances, rests only on ill considered precedents, and wants the greater and more imposing authority of sound and enlightened reason. Its extension therefore is not to be favored. It existed when the complainant was not a witness. But now both parties being witnesses, causes must be determined by a careful comparison of their testimony, if they are the only witnesses, as in the case of a conflict of proof between witnesses who are not parties. The relative trustworthiness of the parties is to be determined by the tribunal before which the issue is raised. In the present case there is no proof that the assignment was recorded. The attorney for the complainant, in his testimony, states that after a careful examination of the records, he was unable to find any deed of assignment from the defendant, Burnham. If it had been recorded, and the record had been overlooked, it could have been easily shown. If not recorded, the complainant could only know by information of others. The defendant, Burnham, does not allege that she ever gave information to the complainant or to his coun-

sel of the assignment of the mortgage.  There is no proof
that he had notice thereof from any other source.  The de.
fendant does not assert that she ever gave notice or that any
one else did, to her knowledge.  The complainant denies it.
Anxious to redeem, and having able counsel to aid him, he
would not be likely to make a demand upon, or a tender to
a person whom he knew had parted with the mortgage to be
redeemed, nor would his counsel advise him so to do.  The
facts on proof, and the circumstances of the case, satisfy us
that the complainant had no notice of the transfer of the
mortgage to Jane Osgood, as is asserted in the answer.

The important question therefore arises whether the owner
of an equity of redemption can legally make a demand upon
or a tender to, or bring a bill in equity to redeem against
the mortgagee or the assignee of such mortgagee, in whom
the title to the mortgage appears of record, notwithstanding
the mortgage may have been assigned, if he be in fact igno-
rant of such unrecorded assignment.  In other words, is the
assignment of a mortgage to be recorded, and is a demand
upon and a tender to the mortgagee of record or the assignee
of record, binding on the estate so far as to authorize the
court to sustain a bill against him, and to compel the negli-
gent assignee to release or discharge the mortgage, as the
legal consequence of his neglect to have his assignment
recorded?

A mortgage is an estate upon condition defeasible upon
the performance of the condition according to its legal effect.
*Erskine* v. *Townsend*, 2 Mass. R., 493.  An assignment of a
mortgage is a deed by which the interest of the mortgagee
is transferred.  A Court of Chancery will undoubtedly inter-
fere to protect equitable rights not recognizable at law.  By
the common law, to enable an action to be maintained, the
assignment must be by deed.  *Parsons* v. *Wells*, 17 Mass. R.,
419;  *Warden* v. *Adams*, 15 Mass. R., 233;  *Peoples' Bank* v.
*Smith*, 24 Maine R., 191.  But as the mortgage is an inter-
est in real estate, the assignment of a mortgage is the assign-
ment of an interest in real estate, and must be recorded.

Mitchell *v.* Burnham.

The assignment should be recorded equally with the mortgage. If not recorded it is in the power of the mortgagee and his successive assignees, by not recording the several assignments, to entirely defeat all attempts of the owner of the equity to redeem. The assignment not being recorded, he cannot know of whom to demand an account or to whom to make a tender, if it be necessary to make the same to an assignee of an unrecorded assignment. By a secret assignment, all efforts to redeem may be successfully prevented. As the assignment of a mortgage is a deed, it should be recorded like any other deed. It is apparent that such was the intention of the legislature. By R. S., ch. 125, s. 28, mortgages may be discharged by deed of release or by causing satisfaction and payment to be entered on the margin of the record, under the hand of the person authorized to discharge it. The record should show such authority. Unless the various assignments by which the state of the title can be shown to be in the person by whom the discharge is made, are to be recorded, it will not appear that the person discharging the mortgage had authority to do the act undertaken to be done. The due protection of the public requires that the assignment of a mortgage should be recorded equally with the mortgage thereby assigned.

The defendant, Burnham, having the apparent title to the mortgage, by the records, and the complainant having no notice of any transfer, the bill to redeem was properly brought against her.

The law seems well settled that payment to a mortgagee is good before notice of an assignment. *James* v. *Johnston*, 7 Johns. R., 417. In this case there was no notice by record, and there is no proof of notice in any other mode. Payment to an assignee is uniformly upheld in law as well as in equity, if made to the original payee without notice of transfer or assignment. Where a claim is assigned the assignee well knows that the contract was not made originally with him, and that the maker does not and cannot know without notice that payment is to be made to any person other than the one

with whom the contract was made. It has been repeatedly held that payment of a bond by the obligor to the obligee after the latter had parted with it by assignment to a third person, but before notice given thereof to the obligor, was good, and discharged the obligor from paying it again to the assignee. *Hodgdon* v. *Naglee*, 5 W. & S. R., 217; *Brindle* v. *McIlvarin*, 9 S. & R., 74.

Such is the unquestioned law between the original parties to a mortgage or any other contract. If there be an assignment and notice, the assignee stands in the place of the assignor, and consequently payment may rightfully be made to such assignee, and may continue to be made to him as to the original party until a new assignment is made and notice thereof is given. It follows, therefore, that if the mortgage was assigned by the defendant, Burnham, still the complainant might well make a payment to her, and should equitably be protected in such payment until there should be notice to him of an assignment by her.

The demand upon the defendant, Burnham, and the tender to her of the amount due, in the absence of all notice that she had parted with her interest in the mortgage, must be upheld. As all the prerequisites to the successful maintenance of the bill have been established as against the defendant, Burnham, it is not to be defeated by the allegation of an unrecorded assignment of which the complainant was ignorant.

The alleged assignee of the mortgage has been made a party. The bill, as amended, denies the existence of the alleged assignment. The proofs in the case show no such assignment. No exhibit thereof has been made. The defendant, Osgood, by permitting the bill to be taken, as confessed against herself, thereby admits that there is no deed of assignment under which she claims any rights adversely to the complainant.

The conditional judgment having been entered in the action Harnden v. Harnden upon the mortgage, the plaintiff, to be entitled to redeem, must pay such further sums, if any,

as have since accrued. *Mann* v. *Richardson*, 21 Pick. R., 355. The mortgage was given to the mortgagee, and for himself and others, for whose benefit he must be regarded as holding the mortgage in trust. It is asserted that all whose interests were secured by this mortgage have deceased. If so, the bill is properly between the present parties — otherwise, the *cestui que trusts*, if any should be made parties, so that no rights of theirs are injured or lost. The master to whom the amount between the parties is to be submitted, and by whom the amount to be paid is to be determined, if there is anything due, may likewise ascertain whether there are any persons protected by the mortgage and interested in its conditions still living, other than the parties to this litigation.

Upon the coming in of the master's report, a final decree, such as the equitable rights of the parties may require, will be entered up.

TENNEY, C. J., and MAY, J., concurred in the result.