WILLIAM H. H. WALKER *v.* FREEMAN B. HOISINGTON AND JOHN
HARDING.

*Book Account.    Warranty.    Cribbing Horse.*

In an action of book account for the agreed price of a horse, the defendant may show a
breach of warranty by the plaintiff in the sale in reduction of the damages for non-
payment of the price.  The warranty being a part of the contract of sale, this case is
distinguishable from those where the claim is for damages for breach of independent
undertakings, which claim can be adjusted only in an action on the undertakings.

Not decided whether a horse that is called a "cribber" is physically sound; but a war-
ranty that a horse is "sound and right," means that the horse is right in conduct and
behavior as to all matters materially affecting its value as well as in physical condition.

BOOK ACCOUNT.    Judgment to account rendered and an audi-
tor appointed who made an alternative report at the May term of
the county court. . The court, BARRETT, J., presiding, rendered
judgment on the report for the defendants, to which the plaintiff
excepted.

The auditor reported as follows :    The plaintiff sold to the de-
fendants in the month of April, 1869, a six year old gelding horse
at the price of two hundred and fifty dollars, to be paid abso-
lutely, and the further sum of fifty dollars to be paid provided
the defendants sold the horse for more than three hundred dollars.
At the time of the sale or delivery of the horse, the defendants
paid the plaintiff one hundred and fifty dollars towards the pur-
chase money and the balance has never been paid, although the
time of payment expired in May or June last and the plaintiff
has often requested payment.    At the time of said sale the plain-
tiff warranted said horse to be " sound and right " and the defen-
dants purchased him relying upon such warranty and supposing
the horse was as represented by the plaintiff.    The horse was de-

livered to the defendants in the afternoon of April 17th, 1869, and was put in the defendant Hoisington's barn, and the next morning said Hoisington discovered that he was a "cribber" so called, which he continued to be ever thereafter until he was sold and went to Burlington, Vermont, in the fall of 1869, and his condition thereafter was not shown. The horse when first discovered to be a "cribber" would gnaw his manger, press his teeth upon it while eating, and drop his grain, at the same time making the noise peculiar to confirmed "cribbers." I am of opinion and find that this disease or habit was upon the horse at the time the plaintiff sold him to the defendants, but there was no evidence that the plaintiff knew it, and the plaintiff himself testified that he had no knowledge of it. I find that disease or habit is regarded as incurable, and that it very much lessens the value of a horse, and in valuable horses depreciates their market value about one half; and in this horse I find that by reason of this disease or habit, he was not worth over said sum of one hundred and fifty dollars at the time of such sale. The defendants kept the horse until the fall of 1869 when they sold him for $150. All the testimony on the part of the defendants in relation to the warranty of the horse and his condition was objected to by the plaintiff's counsel and received subject to the objection.

*Norman Paul*, for the plaintiff, cited to the point that the admission of the evidence offered on the part of the defendants to reduce the plaintiff's claim was erroneous, and could only be allowed on a proper plea or notice, especially in a suit where there is no fraud charged and the foundation for the claim rests wholly on a warranty as in the suit at bar, *Crosby* v. *School District*, 35 Vt.; 623 ; *Hassam* v. *Hassam*, 22 Vt., 516 ; *Eldridge* v. *Mather*, 2 Comstock, 157 ; *The Mayor & others of City of Albany* v. *Trowbridge*, 5 Hill, 71 ; *Barber* v. *Rose*, 5 Hill, 76 ; *Whitberk* v. *Skinner*, 7 Hill, 53 ; *Ivers & McCarty* v. *Van Epps & Shattuck*, 22 Wendell, 154 ; *Burton* v. *R. & C. Stewart*, 3 Wendell, 236 ; *Gleason & Virlie* v. *Clark, Adm'r*, 9 Cowen, 57 ; *Hills* v. *Barrister & Butler*, 8 Cowen, 32 ; *Thornton* v. *Wyman*, 12 Wheaton, 183 ; 6 Peters, 508 ; Sedgwick on Damages, 512.

*Charles P. Marsh*, for the defendant, cited upon this question *Allen* v. *Hooper*, 25 Vt., 137 ; *Keyes* v. *Western Vt. Slate Co.*,

34 Vt., 81, 83; *Vaughan* v. *Porter*, 16 Vt., 266; *Walker* v. *Smith et al.* 2 Vt., 542; *Harrington* v. *Lee*, 33 Vt., 250; *Roberts* v. *Jenkins*, 1 Foster, (N. H.,) 116; *Street* v. *Blay*, 22 E. C. L., 122; *Dawson* v. *Collis et al.*, 4 Eng. L. & E., 338; *Mixer et al.* v. *Colburn*, 11 Met., 561.

The opinion of the court was delivered by

WHEELER, J.   Upon the trial of this case before the auditor the only questions to be determined were, whether the plaintiff was entitled to recover anything or not upon a single item of book charge, and if entitled to recover for that item, how much was due upon it.

These questions were to be tried before the auditor in this action in the same way, and the same rules as to the right of recovery were to be applied, as if the same questions had been on trial in an action of assumpsit before a court and jury, or before a referee.   The plaintiff having brought this action of book account, and obtained a judgment to account, and the appointment of an auditor, and having presented this item to the auditor for adjustment and allowance, could not justly object to having all questions connected with the item he presented adjusted and settled upon the hearing by the auditor.   He might have brought an action of assumpsit and had the same questions tried by jury, but he selected this form of action; his claim is a proper subject of adjustment in it, and all questions pertinent to its adjustment were necessarily to be determined according to the course of proceedings in it.   There was a time when, in an action for goods sold at an agreed price, the defendant was not permitted to show fraud or deceit or a breach of warranty by the plaintiff in the sale, in reduction of the damages for non-payment of the price, but was put to a cross action for a remedy for the fraud, deceit, or breach. But that doctrine was long ago repudiated in England, and perhaps never had any settled foundation in the law of this state, but if it ever was the law of this state it is well settled that it is not so now.   *Allen* v. *Hooker*, 25 Vt., 138; *Keyes* v. *Western Vt. Slate Co.*, 34 Vt., 81.

In this action therefore the auditor had before him, properly and necessarily to be determined, the whole contract of sale of the

horse, charged in the item for which the plaintiff claimed to recover, as well the representations and agreements of the plaintiff made concerning the horse sold as the promise of the defendants to pay the price of it. The auditor has found and reported that the warranty was made at the time of the sale; therefore the claim of the defendants upon the plaintiff, for a reduction of the price on account of the breach of the warranty, was not independent of the contract of sale, and of their agreement to pay the price, but grew out of and was a part of that transaction. An adjustment of the rights of the parties connected with the sale therefore involved the adjustment of this claim. The numerous cases therefore to which we have been referred, that hold that claims for damages for breach of independent undertakings cannot be adjusted only in actions brought upon the undertakings, while they are founded upon sound principles of law, have no application to the question now under consideration. The defendants insist that the facts found and reported by the auditor do not show such a warranty and breach as to entitle the plaintiff to damages on account of the breach of the warranty, or to a reduction in the price of the horse on that account. As to this the auditor has found that the plaintiff warranted the horse to be sound and right. Perhaps this horse was physically sound, although he was what is called a cribber, and perhaps not: as to that we make no decision and express no opinion; but the warranty was as to more than soundness, it was that the horse was sound and right. A fair interpretation of this warranty would make it mean that the horse was right in conduct and behavior as to all matters materially affecting its value, as well as in physical condition. No error is found in the decisions and conclusions of the auditor, or the decisions of the county court, therefore,

Judgment affirmed.